UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 10-235 (RHK/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Joelyn Rose Hart,** | |
| Defendant. | |

Michael A. Dees, Assistant United States Attorney, for Plaintiff.
Manny K. Atwal for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 23, 2010 on Defendant's Motion to Suppress Statements, Admissions, and Answers (ECF No. 16). At the hearing, the Court received testimony from Mark Underhill and Timothy Ball, and the Government submitted one exhibit into evidence. Government Exhibit 1 is a photocopy of a one page, signed "Miranda Rights Warning and Waiver Form." (Gov't Ex. 1.)

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, the Court recommends Defendant's Motion to Suppress Statements, Admissions, and Answers (ECF No. 16) be **DENIED**.

### I. FINDINGS OF FACT

**A. Testimony of Officer Mark Underhill**

At the hearing, Officer Mark Underhill testified that on the morning of January 1, 2009, he was patrolling the Red Lake Indian Reservation as an officer of the Red Lake Police Department.

(Tr. 7-8.) At approximately 4:24 a.m., he responded to a 911 report of individuals fighting near the north housing area. (Tr. 8.) Approximately six to ten minutes later, Officer Underhill received a second call directing him to respond to the Roland Iceman residence in reference to "an individual that had bitten off the ear of another individual." (Tr. 9.) Officer Underhill testified that when he arrived at the Iceman residence he spoke with Tanya Brown, who reported that she had seen Joelyn Thunder bite off the ear of Shena Martin. (Tr. 9-10.) Officer Underhill testified that he then spoke with Shena Martin who was located in the back of an ambulance outside the Iceman residence. (Tr. 10.) Shena Martin stated that Joelyn Thunder "bit her ear." (Tr. 10.)

Officer Underhill testified that he next located Dolly Iceman, the homeowner, and asked her if Joelyn Thunder was inside the residence. (Tr. 10.) Ms. Iceman stated that she was. (Tr. 11.) Officer Underhill then asked for and was granted permission to enter the residence. (Tr. 11.) Officer Underhill testified that he then entered the kitchen of the Iceman residence. (Tr. 12.) The kitchen was occupied by approximately five people. (Tr. 12.) Officer Underhill asked the occupants if Joelyn Thunder was in the residence. (Tr. 12.) A woman in the room stated, "I'm her and I did not bite anyone's ear off." (Tr. 12.) At the hearing, Officer Underhill identified this woman as Defendant. (Tr. 13.) Officer Underhill testified that, at the time she made this statement, Defendant was standing up, looked directly at him, and was responsive to his question about the location of Joelyn Thunder. (Tr. 13-14.)

Officer Underhill testified that at this point he observed blood on Defendant's shirt. (Tr. 14.) He then proceeded to inform her of her *Miranda* rights from memory. (Tr. 14.) Defendant did not say anything in response. (Tr. 14.) After reciting her *Miranda* rights, Officer Underhill asked Defendant why there was blood on her shirt. (Tr. 16.) Defendant replied, "I don't know why the

blood is on my clothing and I did not bite anyone." (Tr. 16.)

At that point, Officer Underhill handcuffed Defendant and escorted her to his squad car. (Tr. 16.) He testified that while standing next to her he detected an odor of alcohol on her breath but that it was not a strong odor. (Tr. 16-17.) At that time, Officer Underhill informed Defendant that she was under arrest for assault and disorderly conduct. (Tr. 17.)

Officer Underhill transported Defendant to the Red Lake Detention Center. (Tr. 17.) Upon arrival, Defendant informed Officer Underhill that her last name was Hart. (Tr. 17.) Further, she told him that she herself was bitten by Shena Johnson and that she wanted to "sign a complaint." (Tr. 17-18.) Officer Underhill told her he could not receive a complaint until she was sober. (Tr. 18.) Officer Underhill testified that he "cannot receive a signed complaint if there's alcohol on her breath." (Tr. 27.) Officer Underhill further testified that at this time Defendant was responsive to his questions and commands and Defendant's speech was not slurred. (Tr. 18.) By "checking the alcohol box" on his police report about the incident, Officer Underhill indicated that Defendant was suspected of consuming alcohol. (Tr. 22-23.)

Later that day, at 7:17 p.m., Officer Underhill conducted an interview with Defendant in a classroom at the Red Lake Detention Center. (Tr. 18.) At the beginning of the interview Officer Underhill read Defendant *Miranda* warnings as they were printed on the "Miranda Rights Warnings and Waiver Form" admitted as Government Exhibit 1. (Tr. 19; Gov't Ex. 1.) At the hearing Officer Underhill identified Defendant's initials and signature on the warning and waiver form. (Tr. 31; Gov't Ex. 1.) Defendant initialed after every line of the *Miranda* warning and signed at the bottom of both the "Your Rights" portion of the form and the "Waiver of Rights" portion of the form. (Tr. 19; Gov't Ex. 1.) Officer Underhill testified that Defendant appeared to understand the *Miranda*

3

warning, that her speech was not slurred, and that she responded appropriately to his questions. (Tr. 20.)

**B. Testimony of Agent Timothy Ball**

Federal Bureau of Investigation Special Agent Timothy Ball interviewed Defendant on January 19, 2010.[1] The interview took place at the residence Defendant shared with Roland Iceman, Jr. (Tr. 34.) Agent Ball testified that Red Lake Criminal Investigator Brian Peterson was present with him during the interview. (Tr. 34.) The interview took place on the porch outside the house. (Tr. 35.) Defendant was not handcuffed during the interview. (Tr. 35.)

Agent Ball told Defendant that he "would like to talk to her about the incident with Shena Martin." (Tr. 35.) He testified that he told her "she was under no obligation to talk to us and that if she wanted us to leave, that we would leave no questions asked." (Tr. 35.) According to Agent Ball, Defendant then asked him "if we were in her position would we get an attorney?" (Tr. 36.) Agent Ball testified that he told her "that I couldn't give her legal advice, but if she felt she needed an attorney, that that should be her decision." (Tr. 36.) Agent Ball testified that Defendant responded that she had "nothing to hide" and agreed to answer questions. (Tr. 36.) At no point during their conversation did Defendant request an attorney, ask to stop the interview, or ask for the officers to leave. (Tr. 36.)

During the interview, Defendant told Agent Ball that at the time of her arrest on January 1, 2009 she had been drinking since 6:00 p.m. the night before. (Tr. 38.) Agent Ball further testified

---

[1] Agent Ball erroneously testified that the interview took place in "2009." (Tr. 33-34.) Both Defendant and the Government indicate in their memoranda that this interview took place a year later on January 19, 2010. (*See* Def.'s Mem. in Supp. of Mot. to Suppress Statements 2, ECF No. 31; Govt.'s Resp. to Def.'s Mot. to Suppress Statements 5, ECF No. 37.) After the hearing, counsel for both Defendant and the Government confirmed that this interview took place on January 19, 2010.

4

that, through other interviews he had conducted, he had learned that on the night of her arrest Defendant had been drinking at a New Year's Eve party. (Tr. 39.)

## II. CONCLUSIONS OF LAW

**A.     Standard for Waiver of *Miranda* Rights**

In order for evidence obtained as a result of custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires that law enforcement advise the individual of his constitutional rights and that he make a valid waiver of those rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Before questioning begins, a suspect in custody must be informed of the following: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 469–70, 478–79. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." *Id.* at 467. After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. *Id.* at 473–74. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Once advised of his *Miranda* rights, a suspect's waiver of his Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *Miranda*, 384 U.S. at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002); *see also Berghuis v. Thompkins,* 130 S. Ct. 2250, 2260 (2010). A waiver is made knowingly if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the

product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. It is the Government's burden to show that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 475.

In order to invoke one's Fifth Amendment right to counsel, a suspect must do so unambiguously. *Thompkins*, 130 S. Ct. at 2259-2260 ("If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights."), citing *Davis v. United States*, 512 U.S. 452, 461–62 (1994).

Similarly, a suspect's invocation of the right to silence must be unambiguous. *See Thompkins*, 130 S. Ct. at 2260 ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning . . . . Here he did neither, so he did not invoke his right to remain silent.") (quotation omitted); *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) ("Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*."). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Thompkins*, 130 S. Ct. at 2261 (citations omitted) ("If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights . . . The prosecution must make the additional showing that the accused understood these rights.")

**B.     Defendant's Motion to Suppress Should Be Denied.**

6

### 1. January 1, 2009 Pre-*Miranda* Statement

Defendant contends that her statement to Officer Underhill "I'm her and I did not bite anyone's ear off" should be suppressed. "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *United States v. Hawkins*, 102 F.3d 973, 975 (8th Cir. 1996). In this case, Officer Underhill asked a group of people standing in the kitchen of the Iceman residence if Joelyn Thunder was in the house. (Tr. 12.) In response, Defendant stated, "I'm her and I did not bite anyone's ear off." (Tr. 12.) Officer Underhill did not ask Defendant any questions before she made this statement. He merely asked the group in the kitchen whether Joelyn Thunder was present. Because this statement was not elicited as the result of interrogation, but was rather a spontaneous declaration, no *Miranda* warning was necessary. Defendant's statement is admissible.

### 2. January 1, 2009 Post-*Miranda* Statement

Defendant argues that Defendant did not knowingly and intelligently waive her *Miranda* rights because she was intoxicated.[2]

The Eighth Circuit has identified two distinct dimensions of the inquiry into the validity of a *Miranda* waiver. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Jones*, 23 F.3d 1307 (8th Cir. 1994).

---

[2] To the extent Defendant also contends that her statements on January 1, 2009 were themselves "involuntary" because she was intoxicated, that argument is rejected. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

### a. Voluntariness

To the extent Defendant disputes the voluntariness of her waiver of her *Miranda* rights, this Court finds that her waiver was voluntary. A defendant's waiver is voluntary if it is not the product of "intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Because Defendant's alcohol consumption was not the result of intimidation, coercion, or deception on the part of the police, it did not render her *Miranda* waiver involuntary.

### b. Knowing and Intelligent

Defendant contends that the statement she made in the kitchen following Officer Underhill's recitation of her *Miranda* warning should be suppressed because Defendant was intoxicated and therefore did not knowingly and intelligently waive her *Miranda* rights.

While a defendant's intoxication may invalidate a *Miranda* waiver, the Eighth Circuit has "declined to adopt a per se rule of involuntariness when confronted with intoxication." *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995). Rather, the Eighth Circuit requires an evaluation of whether, in spite of intoxication, "the evidence shows that [the defendant] understood his rights and knowingly waived them." *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998). In *Turner*, the Eighth Circuit found that although the defendant was intoxicated on the drug PCP, his behavior showed that, at the time of his confession, he had the mental capacity to waive his rights. *Id.* The court in *Turner* relied on the fact that the defendant was cooperative, reviewed and initialed a waiver form, responded to questions, and gave accurate information in finding that he had sufficient mental capacity to waive his rights. In *Brown*, the court found the defendant's waiver to be valid, despite his intoxication, because he was sufficiently coherent to find his driver's license, lie about a license misidentification, and climb stairs. *United States v. Brown*,

535 F.2d 424, 427 (8th Cir. 1976).

There is no question that on the night of her arrest Defendant had been drinking. Officer Underhill noticed an odor of alcohol on her breath and indicated in his police report that Defendant had been drinking. (Tr. 16-17, 23.) Officer Underhill's testimony regarding Defendant's behavior, however, indicates that she was not so intoxicated that she could not understand her rights and knowingly waive them. Officer Underhill testified that when he spoke to Defendant in the kitchen of the Iceman residence she was standing up, she was responsive to his questions and commands, and she made eye contact with him while answering his questions. (Tr. 13-14.) He did not notice any indication that Defendant was intoxicated until he approached close enough to smell "a light odor of alcohol on her breath." (Tr. 16-17.) Defendant was able to walk to the car without assistance and did not stumble. (Tr. 17, 31.) Her speech was not slurred. (Tr. 31.)

Based on the evidence in the record, the Court finds that, though Defendant had been drinking, she had the mental capacity to understand and waive her rights. Because Defendant's waiver of her *Miranda* rights was both knowing and voluntary, her statements are admissible.

### 3.  January 1, 2009 Statement at the Red Lake Detention Center

Defendant contends that her statement given to Officer Underhill at the Red lake Detention Center on the evening of January 1, 2009 should be suppressed because she was too intoxicated to knowingly waive her rights.

As discussed above, a *Miranda* waiver is not per se invalid because a defendant was intoxicated at the time he waived his rights. Rather, the court must determine whether the evidence of the defendant's behavior indicates that he understood and knowingly waived his rights. *Turner*, 157 F.3d at 556. The interview at the Detention Center took place at 7:17 p.m., over thirteen hours

9

after Defendant's arrest. (Tr. 18.) The passage of time indicates that Defendant was less intoxicated at that time than she was at the time of her arrest at the Iceman residence. During this later interview, Defendant signed and initialed a *Miranda* waiver form. (Tr. 19.) Officer Underhill testified that she appeared to understand the form, that she answered questions appropriately, and that she did not slur her speech. (Tr. 20.) This conduct is similar to the conduct in *Turner*, where the Defendant was cooperative, reviewed and initialed a waiver form, and responded to questions. *Turner*, 157 F.3d at 556. The Court finds that Defendant knowingly waived her *Miranda* rights during the interview at the Red Lake Detention Center. The statements are thus admissible.

4. **January 19, 2010 Statement to Agent Ball**

Defendant contends that her statement to Agent Ball should be suppressed because she was in custody during the interview and was not informed of her *Miranda* rights.

A suspect is entitled to a *Miranda* warning when interrogation is "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. For purposes of *Miranda*, a suspect is in custody if, given the totality of the circumstances surrounding the interrogation, a reasonable person would not feel free to end the encounter and leave, or cause the agent to leave. *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007).

Here, Defendant spoke with Agent Ball and Investigator Peterson outside of her home. (Tr. 35.) She was never restrained during the interrogation. (Tr. 35.) Agent Ball testified that he told Defendant "she was under no obligation to talk to us and that if she wanted us to leave, that we would leave no questions asked." (Tr. 35.)

This Court finds that Defendant was not in custody during the interrogation by Agent Ball

and therefore was not entitled to a *Miranda* warning. *See United States v. Lawson*, 563 F.3d 750, 753 (8th Cir. 2009) (finding a suspect not to have been in custody when he was not restrained, he was interviewed in his own home, he was told he did not have to answer the questions, he was not physically threatened, and he was interviewed for less than one hour).

In sum, the Court concludes that suppression of Defendants statements in the instant case is not warranted.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements, Admissions and Answers (ECF No. 16) be **DENIED**.


DATED: October 21, 2010　　　　　　　　　　*s/ Franklin L. Noel*
　　　　　　　　　　　　　　　　　　　　　FRANKLIN L. NOEL
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 4, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 4, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.